# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE R. NAJARRO, et al., | Case No.:  20-CV-1394 W (WVG) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 6]** |
| COUNTY OF SAN DIEGO, et al., | |
| Defendants. | |

Defendants County of San Diego, Kevin McCauley, and Cristal Avila move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs Jaime R. Najarro, Lidia Campos Gonzalez, Christian Najarro, Jaime A. Najarro, and Sharon Najarro oppose.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to dismiss [Doc. 6].

1

I.   **BACKGROUND**

The following allegations are taken from the Complaint (*Compl.* [Doc. 1]).

On August 25, 2019, Deputies Kevin McCauley and Cristal Avila knocked on the front door of Jaime R. Najarro ("Senior"), his wife Lidia Campos Gonzalez, and their three adult children: Christian Najarro, Jaime A. Najarro ("Junior"), and Sharon Najarro. (*Compl.* ¶¶ 8, 9.)  When the door opened, the deputies indicated that they wanted to talk to Junior about an accusation of vandalism. (*Id.* ¶ 9.)  Junior came out from a bedroom and declined the deputies' request to come outside and talk. (*Id.*)  Senior did not consent to the deputies entering his home without a warrant. (*Id.*)  Nevertheless, both deputies entered the home. (*Id.* ¶ 10.)

Upon entering, Deputy McCauley punched Senior in the face multiple times. (*Compl.* ¶ 10.)  McCauley then shot Junior with a taser, pushed him out onto the porch, and forced his face on the concrete, breaking Junior's nose. (*Id.*)  McCauley put his knee on Junior's neck and pointed his gun at the remaining Plaintiffs. (*Id.*)  Both deputies handcuffed Junior and entered the home again. (*Id.*)  McCauley forced Sharon to the ground and put his knee on her neck, causing her to lose consciousness. (*Id.*)  Avila shoved Lidia, causing her to fall back and down onto a couch. (*Id.* ¶ 10.)

At this point, deputies Avila and McCauley allegedly ordered newly arrived deputies to enter the apartment and arrest the other Plaintiffs. (*Compl.* ¶ 11.)  Defendants and the other deputies searched the apartment and seized unspecified personal property, including cell phones. (*Id.*)

All five Plaintiffs were taken to the county jail, but no criminal charges were ultimately filed. (*Compl.* ¶ 12.)  Each Plaintiff contends they suffered serious physical or emotional injuries because of Defendants' actions. (*Id.* ¶¶ 13–17.)

On July 21, 2020, Plaintiffs filed this lawsuit against Deputy McCauley, Deputy Avila, and the County of San Diego.  The Complaint alleges causes of action for violation of the Fourth Amendment under 42 U.S.C § 1983 against Deputies McCauley and Avila; failure to properly train and discipline under 42 U.S.C. § 1983 against the

2

County; and state law claims against all Defendants for negligence, battery, false arrest, and civil rights violations under California Civil Code § 52.1.

Defendants now seek dismissal of various causes of action in Plaintiffs' Complaint.  (*See P&A* [Doc. 6-1].)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

//

//

3

1   **III.   DISCUSSION**

2       **A.   FOURTH AMENDMENT CLAIMS**

3           **1.   Unreasonable Search and Seizure**

4       Defendants seek to dismiss all five Plaintiffs' causes of action against Deputies

5   McCauley and Avila for unreasonable search and seizure in violation of the Fourth

6   Amendment.

7       The first clause of the Fourth Amendment protects the "right of people to be secure

8   in their persons, houses, papers and effects, against unreasonable searches and seizures . .

9   . ." U.S. Const. amend. IV.  "A 'search' occurs when an expectation of privacy that

10  society is prepared to consider reasonable is infringed."  United States v. Jacobsen, 466

11  U.S. 109, 113 (1984).  "A 'seizure' of property occurs when there is some meaningful

12  interference with an individual's possessory interests in that property." Id.

13      Defendants argue the allegations alleged in the Complaint are too general and do

14  not show "individual participation in unlawful conduct" on the part of Avila or

15  McCauley.  (*Reply* [Doc. 9] 3:27–28.)  To the contrary, the Complaint explicitly states

16  that the deputy Defendants violated Plaintiffs' Fourth Amendment right to be secure in

17  their home against unreasonable search and seizure by the government: "Defendants

18  McCauley and Avila barged into Plaintiffs' home without a warrant or any lawful

19  justification." (*Compl.* ¶ 10.)  No amount of probable cause justifies a warrantless search

20  or seizure absent exigent circumstances or consent.  Coolidge v. New Hampshire, 403

21  U.S. 443, 468 (1971).  Neither exigent circumstances nor consent have been alleged here

22  to justify the deputies' warrantless entry.  The deputies were not in hot pursuit and there

23  was no risk that Junior might escape—if he came out of the house he could have been

24  promptly apprehended.  All five Plaintiffs' legitimate expectations of privacy in their

25  home were violated by the Deputies' warrantless entry.  See Katz v. U.S., 389 U.S. 347,

26  361 (1967) (Harlan, J., concurring).

27  //

28  //

1

### 2. Unlawful Detentions and Arrest

2       Defendants also seek to dismiss all five Plaintiffs' second cause of action against

3  Deputies Avila and McCauley for unlawful detention and arrest.

4       A cause of action for unlawful detention or arrest requires a plaintiff to allege that

5  (1) the defendant seized plaintiff's person, (2) the defendant acted intentionally, and (3)

6  the seizure was unreasonable.  Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989).  "[A]n

7  official with no official authority over another actor can also be liable for that actor's

8  conduct if he induces that actor to violate a third party's constitutional rights, provided

9  that the official possesses the requisite intent."  Lacey v. Maricopa Cty., 693 F.3d 896,

10 916 (9th Cir. 2012).

11      Defendants argue the allegations are too general and do not allege that deputy

12 Avila individually arrested any of the Plaintiffs.  As to Plaintiff Junior, the allegations are

13 specific enough to overcome a 12(b)(6) motion.  The Complaint provides that "both

14 defendants handcuffed [Junior]" and "arrested [him] without probable cause" after

15 employing a taser on him and removing him to the porch.  (Compl. ¶¶ 10, 11.)

16      As for the remaining Plaintiffs, the Complaint adequately pleads that both Avila

17 and McCauley induced the other deputies to arrest them without probable cause.  See

18 Lacey, 693 F.3d at 916.  The Complaint states, "[o]ther sheriff's deputies arrived and

19 were ordered by Defendants McCauley and Avila to unlawfully enter Plaintiffs'

20 apartment and arrest the other four Plaintiffs."  (Compl. ¶ 11.)  Contrary to Defendant's

21 contentions, Avila and McCauley did not need to be a supervisor or other official with

22 authority over the deputies.  See Lacey, 693 F.3d at 916.  All they needed was to know

23 the other deputies lacked probable cause to arrest.  Based on the allegations in the

24 Complaint, Deputies Avila and McCauley should have known there was no probable

25 cause to re-enter the home and arrest the Plaintiffs.

26 //

27 //

28

20-CV-1394 W (WVG)

### 3.     Excessive Force

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (internal quotation omitted).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u>  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Id.</u> at 396–97.  This is an objective inquiry. <u>Id.</u>

Defendants argue there are no allegations concerning any use of force on Plaintiffs Lidia or Christian by Deputy McCauley.  The Complaint alleges that after removing Junior to the porch, "Defendant McCauley then forced his knee into [Junior's] neck, while pointing his gun at the other terrified Plaintiffs, threatening to shoot them." (*Compl.* ¶ 10.)  Pointing a gun at someone may constitute excessive force, even without a resulting physical injury.  <u>See</u> <u>Robinson v. Solano Cty.</u>, 278 F.3d 1007, 1014 (9th Cir. 2002) (en banc).  In <u>Robinson</u>, the Ninth Circuit agreed with other circuits "that a police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him." <u>Id.</u> at 1015 (citing <u>Petta v. Rivera</u>, 143 F.3d 895, 905 (5th Cir. 1998) (internal quotations omitted).  Balancing the force used against the need, and construing the Complaint in a light most favorable to Plaintiffs, the Complaint adequately alleges that Defendant McCauley used excessive force on Plaintiffs Lidia and Christian.

Plaintiffs concede that none of the physical actions by Deputy Avila are sufficient to state a fourth amendment violation for excessive force as they fail to address the handcuffing of Junior or the push of Lidia that did not result in any physical injuries.  The

Court agrees.  Plaintiffs do argue that Avila should be liable for failing to intervene in McCauley's infliction of excessive force.  "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen," but only when they have a "realistic opportunity to intercede."  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  "Our precedent does not clearly establish when an officer has a 'realistic opportunity to intercede.'"  Penaloza v. City of Rialto, 836 F. App'x 547, 549 (9th Cir. 2020).  In the one case to consider the issue, the Ninth Circuit concluded that bystander officers present at a shootout between fellow officers and suspects did not have a reasonable opportunity to stop fellow officers from shooting. Cunningham, 229 F.3d at 1289–90.  Here, the Complaint alleges sufficient facts to suggest Deputy Avila did have a reasonable opportunity to intervene in Deputy McCauley's excessive force.  The two deputies "barged into Plaintiff's home" together. While Avila may not have had an opportunity to prevent McCauley from punching Senior "in the face multiple times" or employing a taser on Junior, she certainly could have prevented McCauley from pointing his gun at Plaintiffs while they were both in the process of handcuffing Junior on the porch.  (*Compl.* ¶ 10.)  She also could have prevented McCauley from re-entering the home and choking Sharon into unconsciousness.  (*Id.* ¶ 10.)  Nevertheless, because "[o]ur precedent does not clearly establish when an officer has a 'realistic opportunity to intercede,'" Avila is entitled to qualified immunity and Plaintiffs' excessive force claims against her necessarily fail.  See Penaloza, 836 F. App'x at 549 (9th Cir. 2020).

## B.   *MONELL* CLAIM

Defendants seek to dismiss Plaintiffs' *Monell* cause of action against the County premised on its failure to properly train and discipline Deputies McCauley and Avila.

"A municipality may not be held liable under [42 U.S.C. § 1983] solely because it employs a tortfeasor."  Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997) (referencing Monell, 436 U.S. at 689–92).  Instead, a plaintiff seeking to

establish municipal liability under § 1983 must prove that his or her injury was the result of a municipal policy or custom. Id. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403–04.

However, a "local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). In order to establish a section 1983 claim against a local government entity for failing to act to preserve a constitutional right, the plaintiff must establish: (1) a county employee violated plaintiff's constitutional right; (2) the municipality had a policy or custom that amounts to deliberate indifference; and (3) the custom or policy is the moving force behind the constitutional violation. Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir.2006) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1193-94 (9th Cir. 2002)). In the context of a failure to train claim, deliberate indifference can be proven "without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. (quoting Board of County Commissioners v. Brown, 520 U.S. 397, 409 (1997)).

Here, Defendants argue that the Complaint fails to "identify a custom or policy attributable to the County" or "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of Plaintiffs." (*P&A* 11:25–28.) The Court disagrees with each of these assertions.

Under the *Monell* cause of action, the Complaint identifies the County's custom or policy:

> The inadequate training and improper policies includes training and policies
> relating to warrantless entries into the homes of people and arrests of people

8

who are exercising their constitutional rights, including their right to question whether deputies have a search warrant and protesting when deputies enter their home without a warrant.  Plaintiffs are informed and believe that Defendants and other deputies have been trained that it is permissible to enter a person's home without a warrant when they seek to arrest an occupant, which is contrary to well-established constitutional law and principles. Plaintiffs are also informed and believe that Defendants McCauley and Avila have been trained that it is permissible to arrest people who merely question a deputy's warrantless entry into their home.  (*Compl.* ¶ 35.)

The Complaint's allegations also support an inference of deliberate indifference. As set forth above, the Complaint alleges that Deputies McCauley and Avila entered Plaintiff's home despite not having a warrant—after being affirmatively denied consent to enter by Senior—and ultimately arrested all five Plaintiffs.  (*Id.* ¶¶ 9, 10.)  Reading all inferences in favor of Plaintiffs, it is highly likely that people who refuse a deputy's warrantless entry into their home will have their constitutional rights violated as a result of the County's alleged training or lack thereof.  See Long, 442 F.3d at 1185.  Finally, regarding the allegations of inadequate training, because an inference of deliberate indifference is reasonable under the Complaint's allegations, Plaintiffs do not have to establish a pattern of constitutional violations.  See Long, 442 F.3d at 1186 ("A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.") (internal quotations omitted).

## C.   BATTERY CLAIMS AGAINST DEFENDANTS AVILA AND MCCAULEY

Defendants argue claims of battery brought by Plaintiffs Christian, Sharon and Senior against Deputy Avila and by Christian and Lidia against Deputy McCauley must be dismissed because there are no allegations that either deputy physically touched any respective Plaintiff.  (*P&A* 12:25–27.)  Plaintiffs agree and voluntarily abandon these battery claims.  (*Oppo.* 11:10–15.)  The Court therefore dismisses the claims.

**D.     BANE ACT VIOLATION AGAINST DEFENDANT AVILA**

Defendants challenge the Bane Act claim against Deputy Avila, arguing Plaintiffs "make no allegations concerning threats, intimidation or coercion" and fail to allege any resulting harm.  (*P&A* 13:10–18.)

Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"  Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." Reese v. Cty. of Sacramento, 888 F.3d 1030, 1040–41 (9th Cir. 2018).

Construed in Plaintiffs' favor, the Complaint sufficiently alleges facts establishing threats, intimidation, or coercion by Defendant Avila with the intent to violate Plaintiff's constitutional rights.  The Complaint states that Avila entered Plaintiff's home without a warrant or any lawful justification, shoved Lidia, searched the home, and arrested Plaintiffs without probable cause.  (*Compl.* ¶¶ 10–11.)  These alleged acts of unjustified violence, unlawful detention, and unreasonable search and seizure violated Plaintiffs' civil rights and were committed by "threat, intimidation, or coercion."  See Reese, 888 F.3d at 1043 (explaining "that the plain language of Section 52.1 gives no indication that the 'threat, intimidation, or coercion' must be independent from the constitutional violation").  As to the element of harm, the Complaint alleges that "[Plaintiffs] suffered severe emotional distress resulting from the deputies' wrongful acts . . . ."  (*Compl.* ¶¶ 13–17.)  Accordingly, Defendants' challenge as to this claim against Defendant Avila is denied.

//

//

//

10

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to dismiss [Doc. 6].  Plaintiffs will have leave to amend the Complaint. The first amended complaint must be filed, if at all, within 30 days of this order.

**IT IS SO ORDERED**.

Dated:  3/19/2021

Hon. Thomas J. Whelan
United States District Judge